Earl Danell Bellard v. Statee















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-035-CR
No. 10-01-036-CR

     EARL DANELL BELLARD,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 344th District Court
Chambers County, Texas
Trial Court Nos. 11441 and 11442
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

     Earl Danell Bellard appeals his conviction by a jury for the offense of possession of marihuana
in an amount of 2,000 pounds or less, but more than 50 pounds, and the offense of possession of
cocaine in an amount of more than 400 grams, with intent to deliver. Upon Bellard’s plea of true
to enhancement allegations of three prior felony convictions, the trial court assessed his
punishment for each offense at 40 years in the Texas Department of Criminal Justice, Institutional
Division. The jury made a finding in each case of the use or exhibition of a deadly weapon. In
five issues, Bellard contends that the evidence is legally and factually insufficient to support both
of his convictions and that the trial court erred in denying his motion to suppress evidence. We
affirm.
      Bellard contends in issues one, two, three, and four that the evidence is legally and factually
insufficient to support his convictions. In reviewing the legal sufficiency of the evidence to
support a conviction, we view all the evidence in the light most favorable to the verdict. Cardenas
v. State, 30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000); Narvaiz v. State, 840 S.W.2d 415, 423
(Tex. Crim. App. 1992). The critical inquiry is whether, after so viewing the evidence, any
rational trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. McDuff v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997). This standard gives full
play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate facts. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979).
      In reviewing a challenge to the factual sufficiency of the evidence, we begin with the
assumption that the evidence is legally sufficient. See Santellan v. State, 939 S.W.2d 155, 164
(Tex. Crim. App. 1997). We must view all the evidence without the prism of the "in the light
most favorable to the prosecution" construct. See Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996). We ask "whether a neutral review of all the evidence, both for and against the
finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in
the jury’s determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof." Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see
also Goodman v. State, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001). We must also remain
cognizant of the factfinder’s role and unique position—one that the reviewing court is unable to
occupy. Johnson, 23 S.W.3d at 9. The jury determines the credibility of the witnesses and may
"believe all, some, or none of the testimony." Chambers v. State, 805 S.W.2d 459, 461 (Tex.
Crim. App. 1991). It is the jury that accepts or rejects reasonably equal competing theories of a
case. Goodman, 66 S.W.3d at 287. A decision is not manifestly unjust as to the accused merely
because the factfinder resolved conflicting views of evidence in favor of the State. Cain v. State,
958 S.W.2d 404, 410 (Tex. Crim. App. 1997).
      Derek Prestridge, a state trooper for the Texas Department of Public Safety, testified that on
the evening of June 8, 1999, he stopped Bellard as he was driving eastbound on Interstate 10 in
Chambers County. He indicated that he stopped Bellard because he failed to drive in a single
marked lane of traffic, causing another driver to slow down or apply its brakes. He related that
there are several reasons for stopping such a driver, including the possibility of an intoxicated
driver, mechanical difficulties with the vehicle, problems with the occupants inside the vehicle,
or a fatigued driver.
      Officer Prestridge testified that as he was stopping the vehicle, he saw movement inside. He
indicated that it appeared that both the front and rear seat passengers were making movements as
if the front passenger was ducking down, moving around his seat, or around the glove
compartment area. He related that the odor of raw marihuana came to his attention as he was
talking to Mr. Degree, a passenger in the back seat. He stated that Bellard was the driver of the
vehicle.
      Officer Prestridge said that when he and his partner conducted a search of the vehicle, they
found a pistol under the front passenger seat, what he believed to be marihuana in the trunk of the
car and, underneath the back right passenger seat, a Ritz cracker box containing a white powdery
substance that he believed to be cocaine. He indicated that they also found over $1,900 in cash
underneath the back seat next to the cracker box. He stated that no one in the car claimed the
money. He identified sandwich bags and a rubber glove that he found inside a black bag claimed
by Bellard. Officer Prestridge testified that after the vehicle was towed from the scene, he
received a Ruger automatic 9 mm pistol that the wrecker driver recovered from between the seat
cushions of the driver's seat.
      Officer Prestridge testified that on June 11, 1999, he removed the suspected marihuana and
cocaine from the evidence locker at the Anahuac highway patrol office and took it to the Houston
DPS crime lab for analysis. He indicated that he did not tamper with it in any way. He stated that
in his experience those in possession of narcotics often use weapons for the protection of their
drugs for transport or sale. He characterized the amount of marihuana and cocaine seized as a
large amount. He also indicated that it is not unusual to find more than one subject assisting in
the transport of a large quantity of illegal drugs.
      On cross-examination, Officer Prestridge testified that, prior to the stop, he saw Bellard cross
from one to two feet from the center into the inside lane of the interstate. He indicated that the
other vehicle to which he had previously referred was approximately three car lengths away from
Bellard's vehicle in the center lane, and one car length behind his own vehicle. He acknowledged
that he did not include any mention of this other vehicle in his police report. He stated that
Bellard's action in moving into the inside lane potentially placed him and his partner in danger. 
He assessed the potential danger as the possibility that the driver might have been intoxicated,
fatigued, or ill; the possibility that mechanical difficulties were creating a hazardous condition for
Bellard's vehicle and the vehicle that was following him; and the possibility that there might be
a fight or some type of distress between the driver and passenger.
      Officer Prestridge testified that he administered the horizontal gaze nystagmus test to Bellard. 
He stated that in administering such a test he determines whether he can find clues to see if
someone may or may not have been intoxicated. He acknowledged that he could not find any
clues with respect to Bellard. He indicated that he did not recall asking Bellard any questions as
to whether he was fatigued. He also acknowledged that he did not recall asking Bellard whether
he was having any problems with his vehicle. Officer Prestridge stated that he did ask Bellard
whether he was doing all right and, as best he could recall, that Bellard said that he was.
      Vu-Hai Phan testified that he is a chemist for the Texas Department of Public Safety. He
indicated that the drugs found in the vehicle driven by Bellard consisted of 103.65 pounds of
marihuana and 1,220 grams of cocaine.
      Robert Hancock testified that he is the owner of Three Aces Wrecker Service. He indicated
that he towed the vehicle driven by Bellard first to the Texas Department of Public Safety office
and then to his wrecker yard. He related that he found a pistol lying in the floorboard next to the
driver's seat. He acknowledged the possibility that the weapon could have moved within the car
in the process of unloading the vehicle.
      Kenneth Parks testified that he is with the narcotics service of the Texas Department of Public
Safety. He related his opinion regarding the market value of the drugs. He indicated that the
quantity of the drugs found was sufficient for sale purposes. He stated that it is common for drug
dealers to carry weapons to protect themselves from being robbed. He also said that it is common
for several individuals to ride with a load to help protect it or for one person to ride in a vehicle
with the load, followed by another vehicle containing individuals heavily armed to protect the
load.
      On cross-examination, Parks testified that it is most common for two or three individuals to
be riding together when transporting drugs. On redirect examination, he identified as a drug
ledger a document found in the vehicle Bellard was driving. Referring to the sandwich bags found
in the vehicle in Bellard’s bag, Parks stated that at the street level drugs are usually delivered in
a sandwich or Ziploc bag. Referring to the glove found in the vehicle in Bellard’s bag, Parks
stated that drug dealers use such gloves to ensure that their fingerprints are not left on the
narcotics.
      Cody Glen Muse testified that he was the officer with Officer Prestridge when he stopped
Bellard's vehicle. He confirmed that Bellard crossed one or two feet into the left lane but
indicated that it did not place the patrol vehicle in danger. He also indicated that he did not see
it put another vehicle in danger. He said that he assumed that Bellard did not put any vehicle in
danger. He could not recall whether Officer Prestridge had ever mentioned seeing a vehicle
behind Bellard’s car that was in danger as a result of Bellard's vehicle moving to the left.
      Officer Muse testified that after he and Officer Prestridge stopped Bellard’s vehicle, he began
asking the passengers for their driver's licenses. He indicated that it is common procedure to
request such identification even in the absence of criminal activity on the part of the individuals
involved. He related that, after Bellard got out of his vehicle, he was cooperative, was alert, did
not appear to have any medical problems, and did not appear to be intoxicated. Officer Muse also
testified that he could not detect any odor of marihuana on Bellard. On cross-examination, Officer
Muse acknowledged that several times Bellard bobbled his questions and did not seem to give the
same answer twice. He indicated that Bellard's confusion seemed to concern where they had
stayed and who was with him when he came into town. He denied that individuals detained in
normal traffic stops give confusing or conflicting answers.
      Having been recalled to the stand, Officer Prestridge testified that he apparently overlooked
the weapon found by the wrecker driver. He acknowledged that he found no significant amount
of money on Bellard's person, no drugs in any of the baggies that were recovered, and no drugs
inside Bellard's bag.
      In order to establish the offense of unlawful possession of a controlled substance, the State
must show the accused exercised actual care, custody, control, or management over the contraband
and knew that what he possessed was contraband. Humason v. State, 728 S.W.2d 363, 365 (Tex.
Crim. App. 1987). The control over the contraband need not be exclusive, but can be jointly
exercised by more than one person. Cude v. State, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986). 
When the accused is not in exclusive control of the place where the contraband is found, the State
must show additional affirmative links between the accused and the contraband to show his or her
knowledge of or control over the contraband. Id.
      The affirmative link customarily emerges from an orchestration of several of a list of factors
and the logical force they have in combination. Whitworth v. State, 808 S.W.2d 566, 569 (Tex.
App.—Austin 1991, pet. ref'd). The evidence in this case establishes affirmative links that raise
a reasonable inference of Bellard's knowledge and control of the marihuana and cocaine. These
include: (1) the fact that Bellard was driving the car; See Deshong v. State, 625 S.W.2d 327, 329
(Tex. Crim. App. 1981); (2) the fact that there was a large quantity of marihuana and cocaine; See
Levario v. State, 964 S.W.2d 290, 294 (Tex. App.—El Paso 1997, no pet.); (3) the fact that there
was a strong smell of marihuana on one of the other occupants in the vehicle; (4) the fact that the
individual acknowledging control over the marihuana and cocaine was Bellard’s cousin; See D.
R. H. v. State, 966 S.W.2d 618, 622 (Tex. App.—Houston [14th Dist.] 1998, no pet.); (5) the fact
that Bellard's bag contained baggies and a glove which could have been used to process the drugs
for sale and to keep one's fingerprints off the drugs; See Bryant v. State, 982 S.W.2d 46, 49 (Tex.
App.—Houston [1st Dist.] 1998, pet. ref’d); (6) the fact that there was a pistol found on the floor
near the driver's seat; and (7) the fact that Bellard was extremely nervous and got out to talk to
the officer. Bellard presents affirmative links that were not established, without mentioning or
discussing the affirmative links that were established. He refers us to the case of one of the other
occupants in the vehicle, Jenkins v. State, 76 S.W.3d 709 (Tex. App.—Corpus Christi 2002, pet.
ref’d). We find that case to be distinguishable. The court held in Jenkins that the evidence was
legally insufficient to support the conviction of Jenkins, who was a passenger in the front seat of
the vehicle, because it did not link him to the contraband in such a manner and to such an extent
that a reasonable inference might arise that he knew of the contraband’s existence and exercised
control over it. Id. at 719. In reaching that conclusion, the court noted that Jenkins, unlike
Bellard, was not the driver of the car, and that, unlike Bellard, his luggage contained no drug
paraphernalia. Id. at 716-17. We believe that these distinctions warrant a different result.
      We believe that a reasonable jury could have determined from this evidence that Bellard
exercised care, control, or management over the marihuana and cocaine and knew that what he
possessed was contraband. We further hold that the evidence is not so weak as to be clearly
wrong and manifestly unjust, that the jury's verdict is not against the great weight and
preponderance of the evidence, and that the state of the evidence does not require us to declare the
evidence factually insufficient to prevent manifest injustice. Therefore, we hold that the evidence
is legally and factually sufficient to support Bellard's convictions. We overrule Bellard's issues
one, two, three, and four.
      Bellard contends in issue five that the trial court erred in denying his motion to suppress
evidence because the troopers stopped him without a warrant. We will review Bellard's motion
to suppress evidence applying the standard articulated in Guzman v. State, 955 S.W.2d 85, 87-88
(Tex. Crim. App. 1997), giving almost total deference to the trial court's determination of
historical facts and reviewing de novo the court's application of the law of search and seizure. 
Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). While the trial court did
not make explicit findings of historical facts, it appeared to accept Officer Prestridge's testimony
that Bellard's change of lanes caused another vehicle to take evasive action.
      When a traffic violation is committed within an officer’s view, the officer may lawfully stop
and detain a person for the traffic violation. Walter v. State, 28 S.W.3d 538, 542 (Tex. Crim.
App. 2000). On a roadway divided into two or more clearly marked lanes for traffic, an operator
must drive as nearly as practical entirely within a single lane and may not move from his or her
lane unless that movement can be made safely. Tex. Transp. Code Ann. § 545.060 (a) (Vernon
1999). Officer Prestridge lawfully stopped Bellard because he observed him violating this
provision of the transportation code.
      Bellard's contention that the stop was unlawful is based on his assumption that there is no
evidence showing that his movement from one lane to another was unsafe. This assumption is in
conflict with the trial court's implied finding that Bellard's change of lanes was unsafe because it
caused another vehicle to take evasive action. Bellard primarily relies on the cases of Corbin v.
State, 85 S.W.3d 272 (Tex. Crim. App. 2002); Hernandez v. State, 983 S.W.2d 867 (Tex.
App.—Austin 1998, pet. ref'd); State v. Tarvin, 972 S.W.2d 910 (Tex. App.—Waco 1998, pet.
ref'd); State v. Arriaga, 5 S.W.3d 804 (Tex. App.—San Antonio 1999, pet. ref'd); Ehrhart v.
State, 9 S.W.3d 929 (Tex. App.—Beaumont 2000, no pet.); and Aviles v. State, 23 S.W.3d 74
(Tex. App.—Houston [14th Dist.] 2000, pet. ref’d). We find all these cases to be distinguishable
because none involves a driver changing lanes unsafely, causing another driver to take evasive
action. We also note that we have previously upheld the validity of this stop in the unpublished
case of Jerome Louis Degree, Jr., v. State, (Tex. App.—Waco, July 3, 2002, Nos. 10-01-0016-CR and 10-01-017-CR, pet. denied), for the same reason that we reached that result in this case. 
We overrule issue five.
      The judgment is affirmed.


                                                                   JOHN G. HILL
                                                                   Senior Justice
Before Justice Vance,
      Justice Gray, and
      Senior Justice Hill (Sitting by Assignment)
Affirmed
Opinion delivered and filed February 19, 2003
Publish
[CRPM]